(35 Misc. Rep. 406.)

PEOPLE ex rel. GUERNSEY v. PIERSON et al.

(Supreme Court, Special Term, Jefferson County.　July, 1901.)

1. LOCAL OPTION ELECTION—PROCEDURE.
　　The general election law of the state is not applicable to an election
　in a town under the liquor tax law, but such election is governed by
　Laws 1890, c. 569, known as the "Town Law."

2. SAME—TOWN CANVASSING BOARD—RECANVASS.
　　A town canvassing board cannot be ordered to reconvene and recan-
　vass votes cast at an election on the local option question, and reject
　for irregularities returns from certain districts in the town, unless they
　are wholly void.

3. SAME—IRREGULARITIES.
　　That two inspectors at an election under the liquor tax law elected
　one of their number as poll clerk, in violation of Laws 1890, c. 569, § 38,
　as amended by Laws 1899, c. 168, § 2, does not render the election void.

4. SAME.
　　That the poll lists in certain districts were not subscribed as required
　by statute did not render the election void.

5. SAME.
　　Where inspectors inclosed void ballots in a sealed package, and filed
　them with the statements of the canvass, the election was not void,
　though the inspectors did not return how many ballots were invalid.

6. SAME.
　　The election was not rendered void because a supervisor of the town
　who took no part in the canvass of the votes was present at it, and
　signed the statement in relation to it.

Application by the people, on the relation of E. Brayton Guernsey, for writ of mandamus against Henry B. Pierson and others, officers of the town of Ellisburg, requiring them to convene as a board of canvassers to recanvass the votes on the question submitted under the liquor tax law at a town meeting February 19, 1901, and to throw out certain votes where the election was not legally conducted, and directing the defendant town clerk to enter the result of such recanvass in the town records as required by law.　Denied.

Arthur L. Chapman, for the motion.
Mason M. Swan and A. O. Briggs, opposed.

ANDREWS, J.　It seemed to have been assumed upon the argument of this motion that the general election law of the state (Laws 1896, c. 909) is applicable to such an election as is here called in question.　I doubt if this is so.　Sections 18, 58, 63, 86, 87, 111, 113, and perhaps others, of this statute, refer to, and to some extent regulate or affect, town meetings not held on general election days; but mainly such meetings are governed entirely by the town law (Laws 1890, c. 569), except in so far as this latter act incorporates into itself the provisions of the former statute.　In re Larkin, 163 N. Y. 201, 57 N. E. 404.　At town meetings the justices of the peace preside, and the town clerk acts as the clerk.　A poll list and minutes of the meeting, subscribed by the clerk and the presiding officers, are to be kept and filed in the town clerk's office.　If, how-

ever, there is no general meeting, and the town is divided into districts, the election inspectors in each district appoint a poll clerk, and they and he have the same powers and duties as the justices and town clerk at general meetings. When an election is held under such circumstances, at the close of the polls the inspectors canvass the ballots, and make a statement of the number cast for each candidate, and for or against every question or proposition. "The void and protested ballots, and the voted ballots other than void and protested shall be preserved and disposed of by the inspectors in the manner provided by section one hundred and eleven of the election law." Laws 1899, c. 168, § 2, amending Town Law, § 38. That is, they shall be inclosed in a sealed package and filed with a statement of the canvass. This statement is to be in the same form as statements made by inspectors at general elections. Its form is therefore fixed by the same section 111 and by section 84. There is to be first a return of all the ballots voted, and number voted for each candidate or proposition. The number of ballots "marked for identification" shall be given, and also the number of ballots rejected as void. At the end shall be a certificate that the statement is correct. It is then to be delivered to the justices of the peace of the town and the town clerk, who shall convene and act as a town canvassing board. The form of questions in regard to the sale of liquors, the way in which such questions shall be submitted, and the manner in which ballots are to be prepared and furnished, are regulated by section 16 of the liquor tax law (Laws 1896, c. 112). In determining whether or not this is a proper case for granting a peremptory writ of mandamus, only those facts contained in the relator's papers which are undisputed may be considered. On the other hand, all the relevant facts stated in opposition to the motion, and properly pleaded, are deemed to be true.

It appears that the relator is a resident of, and a hotel keeper in, the town of Ellisburg, Jefferson county, and that until May 1, 1901, he was authorized to traffic in liquors in said town as a hotel keeper under the liquor tax law of the state. On May 18th he applied to the county treasurer for a further certificate authorizing him to continue such traffic in liquors for the year ending May 1, 1902, but such application was refused. It further appears that the town of Ellisburg is divided into five separate election districts, and that at a town meeting held on February 19, 1901, the local option questions set forth in the liquor tax law were properly submitted to the electors of the said town. As a result of such election and canvass made by the votes cast thereat, the town clerk filed with the state commissioner of excise and with the county treasurer of Jefferson county a certificate purporting to show that the majority of the votes upon all the questions so submitted was in the negative. It was in reliance upon this certificate that the application of the relator was refused by the county treasurer. Thereupon the relator makes this application, claiming that the said election was in many respects irregular, and that the canvass of votes made thereat, both by the district inspectors

and by the town canvassing board, failed to comply with the statute. In view of the decision of the court of appeals as to the law controlling town elections, many of the objections as to the acts of the election inspectors become immaterial. But certain irregularities do appear. Perhaps the most important are the following: (1) The statute (Laws 1899, c. 168, § 2) requires the appointment of a poll clerk in each election district, who is required to keep a poll list. The office of these clerks is distinct from that of the inspectors, and the intention of the law is that the two officers shall not be combined in the same person. Yet in two of the districts, at least, the inspectors selected one of their own number to act as poll clerk. (2) A poll list should be kept by the clerk, and this list, subscribed by him and by the election inspectors, is to be kept and filed in the town clerk's office. These lists seem to have been made, but in some instances, at least, they were not subscribed in the method designated. (3) In the Second district of the town this poll list shows that 228 persons voted upon the excise question. In the returns made by the inspectors less than that number of votes are accounted for. On the fourth question, for instance, which is the one in which the relator is interested, the returns show 113 votes "Yes," and 77 votes "No," making a total of 190. No statement was made as to the missing 38 votes. But it appears from the affidavits presented on this motion that these 38 were blank and void. If so, the number of void ballots, at least, should be stated. (4) The town canvassing board consists of the justices of the peace of the town and the town clerk. One of such justices was not present at the canvass of the votes, but there was present one J. P. Wodell, the supervisor of the town. He, however, took no part in the canvass, except to sign it as supervisor.

This being the condition of affairs, the relator claims that he should not be deprived of his right to traffic in liquors; while, on the other hand, the defendants claim that, whatever irregularities may have been committed, the people of the town have expressed their will, and that the result should not be overriden because of the negligence and carelessness of the town officers. I agree with the defendants, and think that the application should be denied. The matters complained of do not enter into the essence of the election. They are matters of procedure, concerning which the statute gives directions. The failure to comply with these directions, however, does not render the election void. The relief asked for is that the town canvassing board be directed to convene and recanvass the votes, and upon such recanvass reject and disregard the returns from certain districts in which these irregularities occurred. This cannot be granted unless the returns complained of are wholly void. Otherwise the canvassing board has done its full duty. They are to canvass the returns made to it. They have no power to recall the inspectors and compel them to correct irregularities. If they met again they could only repeat what they have already done. As has been said, in two districts supervisors were

elected to act as poll clerks. This was an irregularity, but the
office was filled and the duties of the office were performed. The
person so acting was at least a de facto officer, and the fact of his
so acting seems to have cast no uncertainty on the result. The
poll lists, also, were not properly subscribed. But with them the
town canvassers had nothing to do. If they were wholly lacking,
it would have been still their duty to have canvassed the vote upon
the returns made by the inspectors. So in regard to the void bal-
lots. Apparently, such ballots were inclosed, as the statute di-
rects, in a sealed package, and filed with a statement of the can-
vass. The failure of the inspectors to state in their return how
many were void does not affect in any way the certainty of the
result, and should not be used as a pretext for overriding the ex-
press wish of the electors of that district. The fact that the sig-
nature of Mr. Wodell was attached to the canvass made by the
town board is immaterial. He was not a member of·that body,
but his presence in the room while they were performing their du-
ties, and the addition of his signature to their certificate, does not
vitiate their action. The application for a mandamus is therefore
denied, with $10 costs.

Application denied, with $10 costs.